COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Alston and Senior Judge Coleman
Argued by teleconference


MILDRED BALDWIN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2262-10-4                      JUDGE ROSSIE D. ALSTON, JR.
                                                    NOVEMBER 15, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Paul E. Pepper, Deputy Public Defender (Office of the Public
Defender, on brief), for appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Mildred Baldwin (appellant) appeals her convictions for credit card theft in violation of

Code § 18.2-192(1)(a) and credit card fraud in violation of Code § 18.2-195.  On appeal,

appellant argues that the trial court erred in finding her guilty of credit card theft and credit card

fraud, claiming that the evidence did not establish venue in the City of Alexandria.  Finding no

reversible error, we affirm.

## I. Background[1]

Appellant was employed as a comptroller at Calvert Jones Company, located on Edsall

Road in Alexandria, Virginia.  Appellant's duties included management of the "books and

---

\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

records" of the company. Appellant was laid off on October 19, 2009. On this date, a human resources employee and George Petty, the chief financial officer of the company, informed appellant that her employment was terminated, and Petty instructed appellant to pack up her desk and leave. Petty did not supervise appellant as she packed up her office and left the premises.

During appellant's employment with the company, she had held a company credit card issued by Bank of America in the name of another employee. Appellant was authorized to use the credit card for business purposes during her employment. On February 19, 2010, Petty became aware that appellant was still using the credit card and that appellant had changed the billing statement address for the credit card from the company's offices in Alexandria to her home in Maryland. Petty contacted appellant and asked her to return the credit card and make restitution to the company. Appellant responded that she could not return the credit card because she had destroyed it. Appellant also said that she did not have the money to make restitution.

On June 14, 2010, appellant was indicted for credit card theft and credit card fraud. Prior to trial, appellant moved to dismiss for lack of venue. Appellant argued that no act in furtherance of the crimes of credit card theft or credit card fraud occurred in the City of Alexandria. Following a hearing on appellant's motion to dismiss, the trial court denied the motion but stated that appellant could "reraise[ ] this issue after the Commonwealth has presented its case in chief."

Appellant was tried in a bench trial on July 23, 2010. At trial, Valerie Dunigan, a credit card investigator for Bank of America, testified that between the issuance of the September 21, 2009 and October 21, 2009 billing statements for the credit card, the address on the account was changed from the company's address on Edsall Road in Alexandria, Virginia, to an address in Waldorf, Maryland. Dunigan also testified that after October 19, 2009, none of the purchases or transactions using the credit card were made in Virginia and that six payments had been made on

the card from November 16, 2009, to July 1, 2010.  The credit card billing statements were admitted into evidence.

Petty also testified at trial.  Petty described generally the various legitimate and illegitimate uses of a company credit card, including the possible legitimate use of the credit card for nonbusiness purchases or to receive a loan, with the permission of the company.  Petty testified that he had not authorized nonbusiness use of the credit card by appellant or a loan to appellant using the credit card, but acknowledged that it was possible that she could have received authorization from another employee.  Petty testified that appellant did not have permission to take or use the credit card when her employment was terminated on October 19, 2009.

Petty also reviewed the credit card billing statements from October 21, 2009, through February 19, 2010.  He testified that the address where the billing statements were sent in Waldorf, Maryland, was appellant's address.  He had verified appellant's address through payroll records.  He also testified that three charges made on the credit card before the date of appellant's termination were not legitimate business expenses:  charges to State Farm insurance and a Wawa convenience store in Waldorf, Maryland, made on October 15, 2009, and a charge to a 7-Eleven convenience store in Brandywine, Maryland, made on October 18, 2009.[2]  Petty testified further that none of the charges shown by the billing statements from October 19, 2009, to February 19, 2010, were legitimate business expenses, although he acknowledged that there were three charges that were "at least possibly business expenses."

Finally, Officer Sarah Smith of the City of Alexandria Police Department testified regarding her investigation of appellant's use of the credit card.  Appellant's written statement

_____

[2] Appellant was not charged with any crime for her use of the credit card on October 15 or 18, 2009.  Her convictions in the instant case were based solely upon her use of the credit card from October 19, 2009, to February 2010.

- 3 -

made after her arrest was admitted into evidence through the testimony of Officer Smith. In the written statement, appellant stated that she accidentally removed the credit card from her desk along with her other papers when her employment was terminated. Appellant admitted that she used the credit card for personal expenses.

At the conclusion of the Commonwealth's evidence, appellant moved to strike the evidence as insufficient, arguing that the Commonwealth had not established that venue was proper in the City of Alexandria. The trial court denied the motion. Appellant presented no evidence, rested her case, and renewed her motion to strike in closing argument. The trial court again denied the motion and found appellant guilty. The trial court found that the personal charges made using the credit card on October 15 and 18, 2009, before appellant's employment was terminated, provided strong evidence that countered appellant's claim that she inadvertently took the card when she left the company on October 19, 2009.

The trial court sentenced appellant to a total of twenty-four months' imprisonment and suspended the twenty-four months. This appeal followed.

## II. Analysis

We note at the outset that, on appeal, appellant challenges the trial court's holding that venue in Alexandria was proper for the charges of credit card theft and credit card fraud, and not the sufficiency of the evidence supporting her convictions. "When venue is challenged on appeal, we determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Morris v. Commonwealth, 51 Va. App. 459, 464-65, 658 S.E.2d 708, 710-11 (2008) (quoting Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)). To decide whether venue is proper, "a court must determine whether the evidence . . . gave rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court.'" Meeks v. Commonwealth, 274

Va. 798, 802, 651 S.E.2d 637, 639 (2007) (quoting Cheng, 240 Va. at 36, 393 S.E.2d at 604) (internal quotation marks omitted).

We note that "[f]or most crimes, venue is proper in the jurisdiction where *all* the elements of the completed crimes were committed." Gheorghiu v. Commonwealth, 54 Va. App. 645, 655, 682 S.E.2d 50, 55 (2009) (citing Green v. Commonwealth, 32 Va. App. 438, 448, 528 S.E.2d 187, 192 (2000)), aff'd in part, rev'd in part on other grounds, 280 Va. 678, 701 S.E.2d 407 (2010). However, the General Assembly has enacted a special venue statute for credit card theft and credit card fraud. In this regard, Code § 18.2-198.1 provides, in pertinent part, "[A] prosecution for a violation of this article may be had in any county or city in which (i) any act in furtherance of the crime was committed . . . ."

In its assessment of the circumstances of the instant case, the trial court found, as a matter of fact, that appellant took the credit card purposely, as opposed to inadvertently, from the company's offices in Alexandria, Virginia, when she was terminated from her employment. "On review, we will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224 (2007) (citing Mercer v. Commonwealth, 259 Va. 235, 243, 523 S.E.2d 213, 217 (2000)). The trial court's factual findings regarding appellant's purposeful taking of the credit card were not plainly wrong or unsupported by the evidence. The evidence showed that appellant used the credit card for nonbusiness purposes on October 15 and 18, 2009, before she was terminated. These uses support the conclusion that when appellant took the credit card on October 19, 2009, appellant intended to continue to use it for nonbusiness purposes. In addition, the uncontroverted evidence established that the mailing address for the credit card's billing statement was changed from the company's address to appellant's home address sometime between September 21, 2009, and October 21, 2009. The evidence of this change of address could circumstantially lead to the

conclusion that appellant changed the billing statement before or very shortly after taking the credit card to conceal her use of the credit card, thus discrediting her claim that she took the credit card inadvertently. The trial court's factual finding that appellant took the credit card purposefully on October 19, 2009, from the company's Alexandria offices is not plainly wrong, when considered with the circumstances surrounding appellant's pre-termination use of the credit card for nonbusiness purposes and change of address for the billing statement of the credit card. As a result, we are bound by the trial court's factual finding on appeal.

Moreover, appellant's purposeful taking of the credit card from Alexandria is sufficient to establish venue in Alexandria for both credit card theft and credit card fraud. The Virginia Supreme Court has held that "credit card theft is completed where the card or number is unlawfully taken from its rightful owner . . . with the intent to use it, sell it, or transfer it." Meeks, 274 Va. at 803, 651 S.E.2d at 640. Viewed in the light most favorable to the Commonwealth, the evidence proved that appellant unlawfully took the credit card from its rightful owner, her former employer, with the intent to use it when she was terminated on October 19, 2009, thereby completing the crime of credit card theft in Alexandria. Moreover, the act of credit card theft in violation of Code § 18.2-192 was also an act in furtherance of credit card fraud. Code § 18.2-195(1)(a) defines credit card fraud as the "[u]se[ ] [of] . . . a credit card . . . obtained or retained in violation of [Code] § 18.2-192" for "the purpose of obtaining money, goods, services or anything else of value." Thus, to commit credit card fraud under this part of Code § 18.2-195, one must first obtain a credit card by theft, in violation of Code § 18.2-192. As stated earlier, appellant committed credit card theft in Alexandria when she purposefully took the credit card with the intent to use it for her personal purposes. Appellant later committed credit card fraud. Appellant's theft of the credit card was the precursor to, and as such an act in

furtherance of, her later credit card fraud.[3] As a result, the trial court did not err in holding that venue was proper in Alexandria for the charges of credit card theft and credit card fraud.

Affirmed.

---

[3] We note that the instant case is distinguishable from <u>Gheorghiu v. Commonwealth</u>, 280 Va. 678, 701 S.E.2d 407 (2010), because the theft of the credit card in Alexandria in the instant case occurred *before* the fraudulent use of the credit card. In contrast, in <u>Gheorghiu</u>, the Supreme Court of Virginia held that the defendant's unlawful possession of a credit card in violation of Code § 18.2-192 in Arlington County was insufficient to establish venue for credit card fraud in Arlington County because the defendant was found in possession of the credit card in Arlington County *after* he had already committed the credit card fraud in Fairfax County *the previous day.* 280 Va. at 688, 701 S.E.2d at 413. In <u>Gheorghiu</u>, "the crime of credit card fraud . . . was complete" by the time the defendant was found in unlawful possession of the credit card in Arlington County. <u>Id.</u> In contrast, in the instant case, appellant was convicted of credit card fraud for acts committed after she had first committed credit card theft in Alexandria.