COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Chaney, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


CELVIN ERALDO CORADO BELTRAN

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0388-23-2          JUDGE VERNIDA R. CHANEY
                                              JUNE 18, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Randall G. Johnson, Jr., Judge

(Andrew B.C. Wood; Law Office of Wood & Wood, P.C., on brief),
for appellant. Appellant submitting on brief.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Celvin Eraldo Corado Beltran on nolo contendere pleas of rape and

object sexual penetration, both involving a child under the age of 13, and sentenced him to 80 years

of incarceration with 65 years suspended. Beltran challenges the voluntariness of his pleas and the

trial court's consideration of "irrelevant and prejudicial evidence" at the sentencing hearing. This

Court affirms the trial court's judgment because Beltran failed to preserve his arguments for review.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In July 2021, a grand jury indicted Beltran for rape and object sexual penetration of a child under the age of 13. The parties entered an oral plea agreement specifying that if Beltran pleaded nolo contendere to the charges, the Commonwealth would not seek an enhanced penalty of mandatory life imprisonment for rape under Code § 18.2-61(B)(2) and would not argue for a sentence that exceeded the sentencing guidelines' recommendation.

In July 2022, Beltran pleaded nolo contendere to the charges. Before accepting Beltran's pleas, the trial court conducted a thorough colloquy to ensure they were voluntarily and intelligently entered. Beltran confirmed that he had discussed the charges, their elements, and "any defenses" with his attorney. After those discussions, he "decide[d] for [himself]" to plead nolo contendere. He understood that each offense carried a maximum punishment of life imprisonment. Beltran also understood that his convictions could have adverse immigration consequences or "affect [his] civil rights," including his "right[s] to vote" and possess firearms. The trial court did not ask Beltran if he understood that his convictions would subject him to the registration requirements under the Sex Offender and Crimes Against Minors Registry Act, Code §§ 9.1-100 through 9.1-923. The trial court accepted Beltran's nolo contendere pleas as "freely, voluntarily, . . . and intelligently" made.

The Commonwealth proffered that between 2011 and 2013, Beltran repeatedly sexually abused his foster sister, T.R., by penetrating her vagina with his fingers and penis. During that time, Beltran was between 18 and 20 years old, and T.R. was between 8 and 10 years old. In 2021, T.R.'s mother confronted Beltran about the abuse, and he admitted wrongdoing. Beltran stipulated that the Commonwealth's proffered evidence was sufficient to convict him of the

charged offenses. Following the colloquy and proffer, the trial court convicted Beltran of rape and object sexual penetration of a child under the age of 13.

At the sentencing hearing, the Commonwealth introduced written "victim impact statements" from T.R. and her mother, without objection. Beltran had "betrayed" T.R.'s trust, and she continued to experience trauma from his sexual abuse. T.R.'s mother urged the trial court to "lock [Beltran] away for as long as possible" because he "took away [T.R.'s] entire childhood." The trial court also considered discretionary sentencing guidelines prepared by the probation office, which recommended between 7 years and 2 months of incarceration and 15 years and 6 months, with a midpoint of 12 years and 11 months.

The Commonwealth proffered, without objection, that T.R. and her mother would have objected to the parties' plea agreement if they had known the sentencing guidelines' recommendation, which was "much lower than they expected." The Commonwealth explained that he had misinformed T.R. and her mother that the guidelines would recommend "a low end of fifteen years and seven months" and "a high end of thirty-three years and five months."

In addition, the trial court considered the results of a "psychosexual evaluation," which determined that there was a "below average risk" that Beltran would commit another sexual offense. The court also received a presentence investigation report, which specified that Beltran had no prior criminal convictions. The report described Beltran's efforts to overcome his traumatic childhood and extensive history of substance abuse. When Beltran was a child living in El Salvador, MS-13 gang members threatened to kill him because he saw them murder his father. After Beltran fled to another town, his relatives forced him to consume "drugs and alcohol," which caused him to develop a pattern of substance abuse. Beltran attempted to return home, but MS-13 members captured him and forced him to watch them brutally murder a 13-year-old child. Although Beltran ultimately immigrated to the United States in 2010 and

- 3 -

began living with T.R. and her mother in foster care, he continued to consume illicit drugs to cope with memories of his abuse. After sexually abusing T.R., he moved away, enrolled in higher education, and obtained employment. Beltran had since married and raised a family of his own.

Beltran argued that the trial court should impose a sentence near the midpoint of the sentencing guidelines' recommendation. He argued that his mitigating evidence—including his remorse and acceptance of responsibility, history of substance abuse, traumatic childhood, and unlikelihood of reoffending—justified leniency. In allocution, Beltran apologized for his misconduct.

The trial court found that Beltran had accepted responsibility and expressed remorse for his misconduct. The court further acknowledged that Beltran had "overcome" significant personal challenges, including his "drug dependency and abuse" and childhood trauma, and that he was unlikely to commit another sexual offense. Nevertheless, the court found that Beltran had committed grave offenses that caused the victim to suffer potentially permanent trauma. In addition, the court noted that Beltran had received the benefit of a plea agreement that eliminated the otherwise mandatory penalty of life imprisonment for the rape charge. Finally, the court found that although T.R. and her mother were dissatisfied with the sentencing guidelines' recommendation, the guidelines were within "the ballpark of acceptability from the victim's [and her mother's] standpoint" and, therefore, "reflect[ed] a just outcome." Accordingly, the trial court sentenced Beltran to 80 years of incarceration with 65 years suspended. The court also ordered Beltran to "register with the Virginia Department of State Police Sex Offender Registry as required" by Code § 9.1-901.

On appeal, Beltran contends that the trial court erred by accepting his nolo contendere pleas because he did not enter them voluntarily and intelligently. He also argues that the trial court

- 4 -

abused its discretion by "affirmatively consider[ing]" the Commonwealth's proffer regarding the victim's and her mother's dissatisfaction with the plea agreement and the sentencing guidelines' recommendation. He contends that such evidence should not have been included in the proffered victim impact testimony and the trial court abused its discretion by not "discarding" it.

ANALYSIS

I. Voluntariness of Pleas

Beltran challenges the voluntariness of his plea. Beltran failed to preserve this argument for appellate review, because he did not make this objection below or attempt to withdraw his plea. He acknowledges these omissions but asks that we consider his claims of error under the "ends of justice" exception to Rule 5A:18. "The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). The ends of justice exception does not apply here because Beltran has not demonstrated that the trial court erred.

Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), Beltran asserts that the trial court's failure to advise him during the plea colloquy that he would be obligated to register as a sex offender as a consequence of his convictions violated due process and Rule 3A:8(b), thus rendering his nolo contendere pleas invalid. He concedes that a trial court has a duty to inform a defendant during a plea colloquy of all direct—but not collateral—consequences of his guilty plea. *See Brown v. Commonwealth*, 297 Va. 295, 302 (2019) ("For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea."

- 5 -

(quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007))); *see also Zigta v. Commonwealth*, 38 Va. App. 149, 157 (2002) ("Neither Rule 3A:8(b) nor any statute or case law in Virginia requires a trial court to inform a defendant of any collateral consequences that may arise upon the entry of a guilty plea."). Beltran nevertheless maintains that this Court should "revisit the matter . . . in light of *Padilla*" and hold that his obligation to register as a sex offender was a "direct consequence" of his convictions.[1]

Beltran's reliance on *Padilla* is misplaced because that case focused on the adequacy of Padilla's counsel—a matter that this Court does not address here. A "plea of nolo contendere" has the same legal effect as a guilty plea. *Jones v. Commonwealth*, 42 Va. App. 142, 147 (2004). Because a guilty plea waives important rights, the due process clauses of the federal and Virginia Constitutions mandate that a guilty plea "must be 'knowingly, voluntarily, and intelligently' given" and, on appeal, "'the record must contain an "affirmative showing" that the guilty plea was entered voluntarily and intelligently.'" *Holman v. Commonwealth*, 77 Va. App. 283, 302 (2023) (quoting *Hill v. Commonwealth*, 47 Va. App. 667, 671, 674 (2006)). Moreover, "Rule 3A:8(b) embodies the due process requirements for accepting a plea of guilty or nolo contendere." *Allen v. Commonwealth*, 27 Va. App. 726, 732 (1998). That provision requires that before accepting a defendant's plea, "the trial court must determine if the defendant is aware of his constitutional rights, the nature of the charges against him, and whether the plea is intelligently and voluntarily made, all of which must appear on the record." *Zigta*, 38 Va. App. at 157 (citing Rule 3A:8(b)(1)).

The trial court here conducted a thorough colloquy to ensure the voluntariness of Beltran's plea. He has identified no authority requiring the trial court to speak on sex offender registration

---

[1] To the extent that Beltran argues for reversing, extending, modifying, or overruling any of our precedents, this Court is "'bound by decisions of the Supreme Court of Virginia and is without authority to overrule' them." *Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017) (quoting *Roane v. Roane*, 12 Va. App. 989, 993 (1991)).

during that colloquy. Accordingly, Beltran has not established that the trial court erred or that a manifest injustice has occurred. Rule 5A:18 bars our consideration of his argument on appeal.

II. The Commonwealth's Proffer

Beltran contends that the trial court abused its discretion by considering the Commonwealth's proffer regarding T.R.'s and her mother's objection to the plea agreement and sentencing guidelines' recommendation because the proffer did not satisfy Code § 19.2-295.3, which governs the admissibility of victim impact testimony during sentencing. Beltran, again, concedes that he did not preserve this argument for appellate review but maintains that this Court should apply Rule 5A:18's ends of justice exception to consider it.

Assuming without deciding that the trial court erroneously considered the Commonwealth's proffer, Beltran fails to demonstrate that a manifest injustice occurred as a result. As previously discussed, for this Court to apply the ends of justice exception, the defendant must establish that (1) "there is error as contended by the appellant" and (2) "failure to apply the ends of justice provision would result in a grave injustice." *Bass*, 292 Va. at 27 (quoting *Gheorghiu*, 280 Va. at 689). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "[A] *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick*, 69 Va. App. at 146 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Furthermore, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

> The ends of justice exception [has been] applied "in very
> limited circumstances including, for example, where the record

established that an element of the crime did not occur, a conviction based on a void sentence, conviction of a non-offense, and a capital murder conviction where the evidence was insufficient to support an instruction."

*Williams v. Commonwealth*, 294 Va. 25, 28 (2017) (quoting *Gheorghiu*, 280 Va. at 689). By contrast, we have held that the ends of justice exception did not apply even though a trial court considered certain challenged evidence in sentencing a defendant where "the sentence [wa]s not excessive on its face" and fell within the range prescribed by the legislature. *Brittle*, 54 Va. App. at 517.

Beltran does not argue, and the record does not establish, that an element of the charged offenses did not occur or that he was convicted of a non-offense. *See Williams*, 294 Va. at 28. Nor does Beltran contend that his sentence was void or excessive. *Id.*; *see also Brittle*, 54 Va. App. at 517. Rather, he contends that the ends of justice exception should apply because the trial court erroneously "considered" the Commonwealth's proffer in fashioning his sentence.

Beltran's mere assertion of a potentially winning argument is insufficient to demonstrate a manifest injustice. *Winslow*, 62 Va. App. at 546. Moreover, the record reflects that the trial court weighed Beltran's mitigation evidence in fashioning his sentence, including his remorse and acceptance of responsibility, extensive history of substance abuse and childhood trauma, and unlikelihood of reoffending. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000) (holding that it is within the trial court's purview to weigh a defendant's mitigating evidence). Balanced against that evidence, however, was the gravity of Beltran's offenses and the trauma his sexual abuse inflicted upon the victim and her family. Considering those circumstances, we cannot say that Beltran's sentence of 15 years of active incarceration was "excessive on its face." *Brittle*, 54 Va. App. at 517. Moreover, his sentence was within the range set by the legislature. *See* Code §§ 18.2-61(A)(iii); 18.2-67.2(A)(1); *see also Minh Duy Du v. Commonwealth*, 292 Va. 555, 565 (2016) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under

which it is imposed, appellate review is at an end." (quoting *Dorszynski v. United States*, 418 U.S. 424, 431 (1974))).  Thus, Beltran has not established that a manifest injustice resulted.  *See Brittle*, 54 Va. App. at 517.  Accordingly, Rule 5A:18 bars us from considering this argument as well.

CONCLUSION

In sum, Beltran did not preserve his arguments for review, and Rule 5A:18's ends of justice exception does not apply.  Accordingly, this Court affirms the trial court's judgment.

*Affirmed.*